UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Michelle O. o/b/o A.M.O.,[1]

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

6:23-CV-6328-LJV
DECISION & ORDER

---

On June 16, 2023, the plaintiff, Michelle O. ("Michelle"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that her child, A.M.O., was not disabled.[2] Id. On September 11, 2023, Michelle moved for judgment on the pleadings, Docket Item 6, and on October 10, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8. Michelle did not reply.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Michelle applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who demonstrates financial need. 42 U.S.C. § 1382(a).

For the reasons that follow, this Court grants Michelle's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

I.     **CHILDREN'S DISABILITY STANDARD**

An individual under the age of 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a child is disabled, the ALJ first must decide whether the child is currently engaged in substantial gainful activity, not surprisingly defined as work activity that is both substantial and gainful.  20 C.F.R. § 416.972.  "Substantial work activity" involves significant physical or mental activities.  *Id.* § 416.972(a).  "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized.  *Id.* § 416.972(b).  If the child is engaged in substantial gainful activity, he or she is not disabled regardless of medical condition, age, education, or work experience, *id.* § 416.924(b); if not, the ALJ proceeds to the next step.  *Id.*

At step two, the ALJ determines whether the child has a medically determinable impairment, or combination of impairments, that is "severe."  *Id.* § 416.924(a).  An impairment is not severe if it is only a slight abnormality or combination of abnormalities

that causes no more than minimal functional limitations.  *Id.* § 416.924(c).  So anything more than a slight problem is "severe" in the social security context.  *See Castillo v. Barnhart,* 2002 WL 31255158, at *11 (S.D.N.Y. Oct. 8, 2002) ("[I]t does not appear possible for an impairment to be less than severe but more than slight or minimal, because severe includes the entire range above slight or minimal.") (internal quotations and citations omitted).  If the child has a severe impairment, the ALJ proceeds to the third step.  20 C.F.R. § 416.924(a).

At step three, the ALJ decides whether the impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the listings.  *Id.* § 416.924(d).  If the child has an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the child is disabled.  *Id.*

To determine whether impairments functionally equal one in the listings for a claimant under the age of 18, the ALJ assesses the child's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  *Id.* § 416.926a(b)(1).  That assessment compares how the child performs in each of these domains with the typical functioning of a child the same age without an impairment.  *Id.* § 416.926a(b).

"For a child's impairment to functionally equal" an impairment in the listings, "the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain."  *Encarnacion ex rel. George v. Astrue,* 568 F.3d 72,

75 (2d Cir. 2009) (quoting 20 C.F.R. § 426a(a)) (internal quotation marks omitted). A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

## DISCUSSION

### I. THE ALJ'S DECISION

On November 4, 2022, the ALJ found that A.M.O. had not been under a disability since Michelle filed her application on September 21, 2020. *See* Docket Item 5 at 32. The ALJ's decision was based on the sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that A.M.O. was a "school-age child on . . . the date [the] application was filed, and is currently a school-age child[,]" and had not engaged in substantial gainful activity since Michelle filed her application. *Id*. at 21. At step two, the ALJ found that A.M.O. suffered from the severe, medically determinable impairment of attention deficit hyperactivity disorder. *Id.*

At step three, the ALJ found that A.M.O.'s severe, medically determinable impairment did not meet, medically equal, or functionally equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 22-24. The ALJ

5

first found that A.M.O.'s mental impairment did not meet or medically equal listing 112.11 (neurodevelopmental disorders). *Id.* at 23. The ALJ then addressed A.M.O.'s functional limitations "by considering how [A.M.O.] functions at home, at school, and in the community; the interactive and cumulative effects of all of [A.M.O.'s] medically determinable impairments on [A.M.O.'s] activities; and the type, extent, and frequency of help [A.M.O.] needs." *Id.* at 24. And the ALJ concluded that A.M.O. "does not have an impairment or combination of impairments that functionally equals a listing, because [A.M.O.] does not have either 'marked' limitations in two domains of functioning or [an] 'extreme' limitation in one domain of functioning." *Id.* at 32.

More specifically, the ALJ found that A.M.O. had no limitations in the domains of health and physical well-being and moving about and manipulating objects; less-than-marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; and a marked limitation in the domain of caring for oneself. *Id.* at 24-25. For that reason, the ALJ found that A.M.O. had not been under a disability since September 21, 2020, and that Michelle was not entitled to SSI on A.M.O.'s behalf. *Id.* at 32.

## II.   ALLEGATIONS

Michelle argues that the ALJ erred in two ways. Docket Item 6-1 at 1. First, she argues that the ALJ "applied the wrong legal standard by evaluating A.M.O. under the wrong age group." *Id.* at 6. Second, she argues that "[r]emand is warranted because the ALJ's assessment of functional equivalence was not entirely supported by substantial evidence." *Id.* at 10. This Court agrees that the ALJ erred and, because that error was to Michelle's prejudice, remands the matter to the Commissioner.

## III.     ANALYSIS

Social Security regulations require the Commissioner to evaluate a child's functioning by looking at how "appropriately, effectively, and independently" the child performs activities "compared to the performance of other children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(b). In making the appropriate comparison, the regulations provide detailed explanations of what the ALJ should consider in assessing each domain. And that includes both a general description of the types of activities that comprise each domain and more specific "age group descriptors."

The regulations divide children into five categories based on age: newborns and infants (the first year of life), older infants and toddlers (ages one through two), preschool children (ages three through five), school-age children (ages six through eleven), and adolescents (ages twelve through seventeen). 20 C.F.R. § 416.926a(g)-(k). In each domain, the age group descriptors detail the activities that children in a defined age group should be able to do.[4]

---

[4] For example, in the domain of acquiring and using information, school-age children "should be able to use increasingly complex language," 20 C.F.R. § 416.926a(g)(2)(iv), while adolescents "should be able to comprehend and express both simple and complex ideas," *id.* § 416.926a(g)(2)(v). In the domain of attending and completing tasks, school-age children "should be able to concentrate on details and not make careless mistakes in [their] work," *id.* § 416.926a(h)(2)(iv), while adolescents "should be able to pay attention to increasingly longer presentations and discussions, maintain . . . concentration while reading textbooks, and independently plan and complete long-range academic projects," *id.* § 416.926a(h)(2)(v). In the domain of interacting and relating to others, school-age children "should begin to understand how to work in groups to create projects and solve problems," *id.* § 416.926a(i)(2)(iv), while adolescents "should be able to initiate and develop friendships with children who are [their] age," *id.* § 416.926a(i)(2)(v). In the domain of caring for oneself, school-age children "should begin to develop [an] understanding of . . . what is acceptable and unacceptable behavior . . .[,] demonstrate consistent control over [their] behavior, and . . . be able to avoid behaviors that are unsafe or otherwise not good for [them]," *id.* § 416.926a(k)(2)(iv); adolescents "should feel more independent from others and should be increasingly independent in all of [their] day-to-day activities [and] . . . discover

7

When applying the age categories, "the claimant's age as of the time of the decision governs in applying the regulations." *Leal v. Comm'r of Soc. Sec.,* 2012 WL 864458, at *4 (N.D. Ohio Mar. 13, 2012). Michelle argues that the ALJ erred by assessing A.M.O. as "school-age[]" when A.M.O. actually was an "adolescent." Docket Item 6-1 at 6-9. She is correct.

The ALJ noted that A.M.O. "was born on February 4, 2007," and therefore "was a school-age child on September 21, 2020, the date [the] application was filed, and is currently a school-age child." Docket Item 5 at 21. But that is simply incorrect. A.M.O. was thirteen on September 21, 2020, and fifteen when the ALJ issued his decision in November 2022. A.M.O. therefore was an adolescent during that entire period of time, and the ALJ clearly erred in evaluating A.M.O. as a child under the age of twelve. *Butler ex rel. J.B. v. Colvin,* 2013 WL 1007717, at *3 (S.D. Ala. Mar. 13, 2013) ("This 'misidentification' is important, of course, because the ALJ thereafter evaluated functional equivalence in the context of J.B. being solely a school-age child . . ..") (citation omitted).

Courts across the country have found that if an ALJ "compare[s a] child to the wrong age group, the determination [is] fundamentally flawed" and requires remand.[5]

---

appropriate ways to express [their] feelings, both good and bad." *Id.* § 416.926a(k)(2)(v).

[5] The single case from this circuit that addresses this issue is *Carolyn P. o/b/o T.R.M. v. Comm'r of Soc. Sec.*, 2022 WL 896765, (W.D.N.Y. Mar. 28, 2022). In *Carolyn P.,* the court found that "even if the ALJ did commit error by not considering the adolescent age category, the error was harmless under the unique facts of this case." 2022 WL 896765, at *5. Those unique facts were that (1) the child turned twelve only two weeks before the hearing and therefore had just become an adolescent at the time of the hearing, (2) no evidence other than the hearing testimony addressed limitations after the child's twelfth birthday when the child became an adolescent, and (3) the ALJ declined to credit the hearing testimony. *See id.* Here, in contrast, A.M.O. was fifteen

*See, e.g., Tisdale ex rel. B.O.H. v. Astrue,* 2008 WL 4145838, at *3 (M.D. Fla. Sep. 8, 2008); *McGee o/b/o J.S.F. v. Kijakazi,* 2022 WL 4123980, at *2 (E.D. Cal. Sep. 9, 2022) ("Federal district courts have consistently held" that evaluating a child as part of the incorrect age group is "legal error [that] warrants reversal and remand.") (citations omitted); *Saucedo v. Kijakazi,* 2022 WL 464639, at *4 (W.D. Tex. Feb. 15, 2022) ("Other courts considering an ALJ's misclassification of a child claimant's age in evaluating his or her limitations have repeatedly found such error to be prejudicial and necessitating remand.") (citations omitted); *Tolley v. Saul,* 2021 WL 3044437, at *3 (S.D. Ga. Jun. 30, 2021) (remanding where the ALJ "incorrectly indicated the [c]laimant was a school-age child on the date of his decision . . . and failed to correctly identify [c]laimant as an adolescent"); *Krystal H. on behalf of C.H. v. Saul,* 2020 WL 809246, at *9 (W.D. Va. Jan. 24, 2020) ("Federal district courts have held that [the ALJ's failure to compare a child's functioning to the correct age group is] legal error [that] warrants reversal and remand") (internal quotations omitted); *Ebony J. on behalf of O.C.J. v. Saul,* 2019 WL 9075875, at *8 (W.D. Va. Sep. 6, 2019) ("Thus, if the ALJ compared the child to the wrong age group when rating the severity of his impairment-related limitations in the domains, the ALJ's determination would be fundamentally flawed.") (internal quotation and citations omitted); *Yaws on behalf of B.D.H. v. Berryhill,* 2017 WL 1026231, at *10 (N.D. Tex. Feb. 23, 2017) ("A failure to clearly consider the applicable age category . . . requires remand."); *see also Nardone on behalf of I.F. v. Kijakazi,* 2022 WL 16702089, at *7 (E.D. Cal. Nov. 3, 2022) ("Because the undersigned cannot tell whether [the ALJ

---

when the ALJ issued a decision evaluating A.M.O. as under the age of twelve. And here, there was extensive evidence about A.M.O.'s functioning as an adolescent. So *Carolyn P.* is inapposite.

9

applied the correct age group standard], the undersigned recommends that the action be remanded.").

The Commissioner concedes that the ALJ "incorrectly refer[red] to A.M.O. as being a school[-]age[] child," Docket Item 8-1 at 10 (citing Docket Item 5 at 26), but argues that the "error is harmless because substantively, the ALJ compared A.M.O.'s functioning to similarly aged peers without limitation in the domain analyses," Docket Item 8-1 at 10-11.  For example, the Commissioner says, when the ALJ referred to A.M.O.'s grades, "the ALJ necessarily compared A.M.O." to like-aged peers.  *Id*. at 11.

The Commissioner may well be correct that insofar as the ALJ addressed A.M.O.'s grades, he must have compared those grades to the grades of others in the same class.  But that certainly is not true of other evaluations in the ALJ's decision.  By classifying A.M.O. as a school-age child, for example, the decision suggests that the ALJ compared A.M.O. to school-age children with respect to how A.M.O. interacted with and related to others, how A.M.O. engaged in self-care, and how A.M.O attended to health and physical well-being.

In fact, the examples listed by the ALJ in one of the domains suggest that he indeed evaluated the evidence as though A.M.O. were a school-age child.  In the area of attending and completing tasks, the ALJ specifically noted A.M.O.'s ability to "pay[] attention during play or sports activities . . ., tak[e] turns, and complet[e] work accurately without careless mistakes," Docket Item 5 at 29—that is, things that a school-age child should be able to do, *see* 20 C.F.R. § 416.926a(h)(2)(iv).  So there is good reason to believe that the ALJ actually compared A.M.O. to children in the incorrect age group.

Therefore, the ALJ misidentified A.M.O.'s age group, a key factor in the required analysis. And because that error may have materially affected the analysis, it was not harmless. *See Saucedo,* 2022 WL 464639, at *4 ("Accordingly, to uphold the ALJ's decision here, the [c]ourt must find that the misclassification of M.S.'s age did not prejudice M.S. Because the ALJ could have reached a different conclusion had she analyzed M.S.'s functioning as compared to other children his age, the ALJ's error was not harmless."); *see also Butler,* 2013 WL 1007717, at *3 n.7 ("[I]f the age descriptors meant nothing, the regulations would not make any age distinctions."); *Tisdale,* 2008 WL 4145838, at *3 ("This [harmless error] argument is unpersuasive. In determining whether the child had marked or extreme limitations, the [ALJ] was directed to compare the child to children his age who do not have impairments.").

Moreover, while the Commissioner is correct that the ALJ relied on opinions that listed A.M.O.'s correct age, *see* Docket Item 8-1 at 11 (citing Docket Item 5 at 28), that alone cannot salvage the decision. As the Commissioner notes, some courts have found that remand is not necessarily required when an ALJ does not compare a child to his or her similarly aged peers but relies on evaluations that make the comparison. *See e.g., Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec.,* 2021 WL 916016, at *5 (W.D.N.Y. Mar. 10, 2021) ("Given that the teacher questionnaires all compared J.D.J.W. to 'same-aged children,' and that the ALJ considered these questionnaires, I do not agree with plaintiff that the ALJ failed to adequately compare J.D.J.W. to his same-aged peers."); *Lateachia C. o/b/o K.N.A. v. Berryhill,* 2019 WL 2240387, at *8 (W.D.N.Y. May 24, 2019) (rejecting claimant's argument that ALJ did not compare child with same-aged peers in part where the ALJ relied on opinions that compared the child to similarly aged

11

peers).  But in those cases, the ALJ simply failed to compare the child to like-aged peers; the ALJ did not err by comparing the child to children in the incorrect age group. Here, by incorrectly categorizing A.M.O. in the incorrect age group, the ALJ may well have compared her functioning to that of younger children.[6]  And given that apparent error, remand is required.  *See Johnson*, 817 F.2d at 986 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

What is more, it is the ALJ's duty to assess the evidence based on the age-specific standards within the domains.  20 C.F.R. § 416.924b(a)(2)(i) ("If the listing appropriate for evaluating [a child's] impairment is divided into specific age categories, we will evaluate [the] impairment according to [the child's] age when we decide whether [the] impairment meets that listing."); *see also Pendergrass OBO J.S.R. v. Comm'r of Soc. Sec.,* 2019 WL 13219578, at *4 (W.D.N.Y. Dec. 17, 2019) ("It is agency regulations and rulings that provide guidance to the ALJ in comparing a claimant's functioning to

---

[6] If the decision suggested that the ALJ realized that A.M.O. was an adolescent, the Court may have found the misclassification to have been a mere scrivener's error. For example, if the decision included examples of the ALJ's comparing A.M.O. to other adolescents, this Court may well have found the misclassification to have been a harmless mistake.  But the ALJ did not do that here.  In fact, as noted above, *see supra* at 10, at least in the domain of attending and completing tasks, the ALJ cited criteria consistent with school-age children, not adolescents.  So this Court cannot assume that the mistake was nothing more than a typo.  *See Neifert v. Kijakazi,* 2022 WL 17627869, at *3 (M.D. Pa. Dec. 13, 2022) ("[W]hen the court 'is uncertain as to whether [inconsistencies] are mere scrivener's errors . . . or oversights that could have resulted in a different conclusion,' a remand is appropriate.") (citing *Raper v. Colvin,* 262 F. Supp. 3d 415, 422 (N.D. Tex. 2017).

that of his or her peers."). And while opinion evidence might and should color that analysis, such evidence does not and cannot supplant the ALJ's independent obligation.

The Commissioner also argues that even though the ALJ misclassified A.M.O.'s age, this Court should affirm because substantial evidence supports the conclusion that A.M.O. was not disabled. *See* Docket Item 8-1 at 10. But that argument asks this Court to independently weigh the evidence and apply the correct standard, something it cannot do. *See Ebony J.,* 2019 WL 9075875 at *9 ("[R]eviewing courts cannot engage in an analysis that the ALJ should have done in the first instance, or speculate about how the ALJ might have ruled had he properly applied the pertinent legal requirements to the record evidence.") (internal alterations, citations, and quotation marks omitted); *Bellamy v. Apfel,* 110 F. Supp. 2d 81, 87 (D. Conn. 2000) ("[T]he role of this [c]ourt is not to decide the facts anew, nor to reweigh the facts, nor to substitute its judgment for the judgment of the ALJ.") (quotation omitted).

In sum, the ALJ's decision on its face put A.M.O. in the incorrect age category, and this Court has no way of knowing whether the ALJ's conclusions would have been different had he applied the correct one. The Court therefore remands the ALJ's decision so that the correct standard can be applied.[7] *Cf. Ebony J.,* 2019 WL 9075875 at *9 ("[B]ecause I cannot gauge the propriety of the ALJ's functional-equivalence assessment, I cannot say that substantial evidence supports the denial of benefits in this case.") (internal quotations and citations omitted); *A.M. v. Colvin,* 2016 WL

---

[7] The Court "will not reach the remaining issues raised by Michelle because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020).

1060366, at *11 (E.D. Mo. Mar. 17, 2016) (remanding where the court could not tell whether the ALJ applied the correct age group category); *Kline ex rel. J.H.-K. v. Colvin*, 2014 WL 69953, at *16 (N.D. Ill. Jan. 9, 2014) (finding the decision not supported by substantial evidence where the ALJ applied the wrong age category in reaching her finding).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Michelle's motion for judgment on the pleadings, Docket Item 6, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 15, 2025
       Buffalo, New York

     *Lawrence J. Vilardo*
     LAWRENCE J. VILARDO
     UNITED STATES DISTRICT JUDGE